No. 20-16174

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

TWITTER, INC.,

PLAINTIFF-APPELLANT,

V.

WILLIAM BARR, in his capacity as Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, CHRISTOPHER WRAY, in his capacity as Director of the Federal Bureau of Investigation, and FEDERAL BUREAU OF INVESTIGATION,

DEFENDANTS-APPELLEES.

On Appeal from the United States District Court
District for Northern California, Oakland
4:14-cv-04480-YGR

Yvonne Gonzalez Rogers, District Judge

## BRIEF OF AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION, AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA, AND AMERICAN CIVIL LIBERTIES UNION OF SAN DIEGO & IMPERIAL COUNTIES IN SUPPORT OF PLAINTIFF-APPELLANT TWITTER, INC. AND REVERSAL

Andrew Crocker
Naomi Gilens
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109

Tel.: (415) 436-9333
andrew@eff.org

Ashley Gorski
Brett Max Kaufman
Patrick Toomey
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Fl.
New York, NY 10004
Tel.: (212) 549-2500
agorski@aclu.org

Matthew T. Cagle
ACLU FOUNDATION OF
    NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493
mcagle@aclunc.org

Peter J. Eliasberg
ACLU FOUNDATION OF
    SOUTHERN CALIFORNIA
1313 W 8th Street, Suite 200
Los Angeles, CA 90017
Tel.: (213) 977-9500
peliasberg@aclusocal.org

David Loy
ACLU FOUNDATION OF SAN DIEGO &
    IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
Tel.: (619) 398-4187
davidloy@aclusandiego.org

*Counsel for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amici curiae Electronic Frontier Foundation, American Civil Liberties Union, American Civil Liberties Union of Northern California, American Civil Liberties Union of Southern California, and American Civil Liberties Union of San Diego & Imperial Counties, state that they do not have a parent corporation and that no publicly held corporation owns 10% or more of their stock.

Dated: September 30, 2020                  By:  /s/ *Andrew Crocker*
                                                         Andrew Crocker

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ..................................................... i

STATEMENT OF INTEREST .............................................................1

INTRODUCTION ...................................................................2

ARGUMENT......................................................................3

    I.      The government's censorship of Twitter's transparency report is a classic prior restraint subject to "extraordinarily exacting" scrutiny....3

    II.    The district court's failure to hold the government to the First Amendment's demanding burden conflicts with prior decisions of this Court and the Supreme Court.............................................7

CONCLUSION .................................................................12

CERTIFICATE OF COMPLIANCE.................................................14

CERTIFICATE OF SERVICE....................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*,
509 U.S. 544 (1993) ................................................................. 3

*Beckerman v. City of Tupelo*,
664 F.2d 502 (5th Cir. 1981) ................................................. 5

*Carroll v. President & Comm'rs of Princess Anne*,
393 U.S. 175 (1968) ...............................................................6, 8

*Columbia Broadcasting Systems, Inc. v. U.S. Dist. Ct.*,
729 F.2d 1174 (9th Cir. 1984) .................................................*passim*

*Def. Distrib. v. Dep't of State*,
838 F.3d 451 (5th Cir. 2016) ................................................. 5

*Domingo v. New England Fish Co.*,
727 F.2d 1429 (9th Cir. 1984) .......................................................5, 8

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*,
860 F.3d 1244 (9th Cir. 2017) ............................................... 6

*Hunt v. Nat'l Broad. Co.*,
872 F.2d 289 (9th Cir. 1989) ................................................. 4

*Landmark Commc'ns Inc. v. Virginia*,
435 U.S. 829 (1978) ............................................................... 5

*Levine v. U.S. Dist. Ct.*,
764 F.2d 590 (9th Cir. 1985) .......................................................5, 8

*Matter of Providence Journal Co.*,
820 F.2d 1342 (1st Cir. 1986)................................................. 5

*N.Y. Times v. United States*,
403 U.S. 713 (1971) .......................................................5, 6, 7, 9

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ...............................................................*passim*

*Org. for a Better Austin v. Keefe*,
402 U.S. 415 (1971) ............................................................... 4

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ............................................................... 8

*Se. Promotions Ltd. v. Conrad*,
  420 U.S. 546 (1975) ........................................................................... 4

*Twitter v. Barr*,
  445 F. Supp. 3d 295 (N.D. Cal. 2020) ......................................... 7, 8, 9

*Twitter v. Sessions*,
  263 F. Supp. 3d 803 (N.D. Cal. 2017) ............................................... 7

## STATEMENT OF INTEREST[1]

The Electronic Frontier Foundation ("EFF") is a member-supported, non-profit civil liberties organization with more than 30,000 dues-paying members nationwide, bound together by a strong and mutual interest in helping courts ensure that constitutional rights remain protected as technologies change, digital platforms for speech reach wide adoption, and the Internet continues to reshape the government's interactions with its citizens. EFF has appeared before federal courts across the country, as both counsel and amicus, in cases involving constitutional challenges to government surveillance orders. *In re National Security Letter*, 863 F.3d 1110, Nos. 16-16067, 16-16081, 16-16082 (9th Cir. 2017), *pet. for reh'g pending* (counsel); *Barr v. Under Seal*, No. 18-56669 (9th Cir. 2020) (amicus).

The American Civil Liberties Union ("ACLU") is a nationwide, non-partisan, non-profit organization with approximately two million members and supporters dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. The ACLU of Northern California, ACLU of Southern California, and ACLU of San Diego & Imperial Counties are state affiliates of the national ACLU. The ACLU has appeared before federal

---

[1] Pursuant to Federal Rule of Appellate Procedure Rule 29(c), amici certify that no person or entity, other than amici curiae, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. The parties have consented to the filing of this brief.

courts in numerous cases involving government surveillance orders and First

Amendment rights, including as counsel in *U.S. Dep't of Justice v. American Civil*

*Liberties Union Foundation*, 812 F. App'x 722 (9th Cir. 2020), *In re Certification*

*of Questions of Law to the Foreign Intelligence Surveillance Court of Review*, No.

FISCR 18-01, 2018 WL 2709456 (FISCR Mar. 16, 2018), and *John Doe, Inc. v.*

*Mukasey*, 549 F.3d 861 (2d Cir. 2008).

## INTRODUCTION

It is a foundational tenet of the First Amendment that, while harmful speech

may at times be punished after the fact, the government cannot censor speech in

advance except in extraordinary circumstances. Disregarding this essential and

well-established principle, the district court reviewed the government's prior

restraint on Twitter's speech using ordinary strict scrutiny, as if the government

had applied a content-based sanction on speech that had already been published.

Under longstanding precedent, this was the wrong legal test. The district court

entirely failed to account for the heavy presumption against the constitutionality of

prior restraints. It failed to evaluate whether the government's restraint was

necessary to further an interest of exceptional magnitude; whether the purported

harm was extremely serious, imminent, and irreparable; and whether the restraint

was couched in the narrowest possible terms to achieve a pin-pointed objective.

Amici urge this Court to hold that the district court erred by not applying

extraordinarily exacting scrutiny to the government's prior restraint on Twitter's speech.

## ARGUMENT

I. **The government's censorship of Twitter's transparency report is a classic prior restraint subject to "extraordinarily exacting" scrutiny.**

This appeal grows out of Twitter's attempt, six years ago, to publish a transparency report describing the aggregate number of government surveillance orders it had received in July through December of 2013. Twitter submitted its draft transparency report to the FBI for review—and the FBI, in turn, forbade Twitter from publishing it.

In barring Twitter from engaging in speech before that speech occurred, the government imposed a quintessential "prior restraint"—"the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Precedent from the Supreme Court and this Court make clear that prior restraints can pass constitutional muster only in the most extraordinary circumstances. *See Alexander v. United States*, 509 U.S. 544, 550 (1993); *Columbia Broadcasting Systems, Inc. v. U.S. Dist. Ct.* ("*CBS*"), 729 F.2d 1174, 1183 (9th Cir. 1984). That is because any prior restraint on speech bears "a heavy presumption against its constitutional validity"—a presumption the government bears the burden of overcoming. *Org. for a Better Austin v. Keefe*, 402

U.S. 415, 419 (1971) (quotation marks omitted). Flowing from the First Amendment's "distaste for censorship," this presumption is "deeply etched in our law." *Se. Promotions Ltd. v. Conrad*, 420 U.S. 546, 553, 559 (1975); *see also Nebraska Press*, 427 U.S. at 559. Unlike the "threat of criminal or civil sanctions after publication," which "chills" speech, prior restraints entirely "freeze" speech for their duration. *Nebraska Press*, 427 U.S. at 556, 559. As a result, prior restraints are justified only in unusual and extreme circumstances. *Id.* at 559; *see also CBS*, 729 F.2d at 1183 ("[P]rior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances."); *Keefe*, 402 U.S. at 419 (explaining that the government "carries a heavy burden of showing justification" when defending a prior restraint on speech).

This Court has consistently characterized the scrutiny to which prior restraints are subjected as not just strict, but "extraordinarily exacting." *CBS*, 729 F.2d at 1178; *see also Hunt v. Nat'l Broad. Co.*, 872 F.2d 289, 295 (9th Cir. 1989) ("The *Nebraska Press* standard is an exacting one[.]"). Given the ban at issue here, both prongs of traditional "strict scrutiny"—the requirements that the challenged government action advance a compelling interest, and that the government action is narrowly tailored to achieve that interest—are heightened.

First, to pass constitutional muster, a prior restraint must do more than merely further a compelling interest. It must instead be necessary to further an

urgent governmental interest of the highest magnitude. *Landmark Commc'ns Inc.*

*v. Virginia*, 435 U.S. 829, 845 (1978). This is an exceedingly high bar. This

standard requires the government to show that the harm it seeks to prevent through

the silencing of a speaker is not only extremely serious but "direct, immediate, and

irreparable." *N.Y. Times v. United States* ("*Pentagon Papers*"), 403 U.S. 713, 730

(1971) (Stewart, J., joined by White, J., concurring); *see id.* at 726–27 (Brennan, J.,

concurring). The government must also show that such harm is not simply

possible, or even probable, but is essentially imminent. *See Landmark Commc'ns*,

435 U.S. at 845 (requiring that "the degree of imminence" be "extremely high" and

substantiated through a "solidity of evidence"); *Domingo v. New England Fish*

*Co.*, 727 F.2d 1429, 1440 n.9 (9th Cir. 1984) (same); *Levine v. U.S. Dist. Ct.*, 764

F.2d 590, 595 (9th Cir. 1985) (speech must pose "either a clear and present danger

or a serious and imminent threat").[2]

Second, when analyzing prior restraints, the Supreme Court has imposed an

especially demanding form of the narrow-tailoring requirement, explaining that

prior restraints must be "couched in the narrowest terms that will accomplish the

---

[2] Courts in other circuits have similarly relied on Justice Stewart's command that a
prior restraint may only be sustained where the speech would "surely result in
direct, immediate, and irreparable damage to our Nation or its people." *See, e.g.*,
*Def. Distrib. v. Dep't of State*, 838 F.3d 451, 474 (5th Cir. 2016); *Matter of*
*Providence Journal Co.*, 820 F.2d 1342, 1348-49 (1st Cir. 1986); *Beckerman v.*
*City of Tupelo*, 664 F.2d 502, 514 (5th Cir. 1981).

pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183–84 (1968). The government must also show that the prior restraint will actually prevent the harm, and that it has no alternative to the prior restraint to prevent such harm. *Nebraska Press*, 427 U.S. at 562, 565, 569–70.

Relevant here, this exacting scrutiny applies even when the government asserts an interest in protecting national security. As this Court recently explained, "national security interests . . . are generally insufficient to overcome the First Amendment's 'heavy presumption' against the constitutionality of prior restraints." *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 860 F.3d 1244, 1259-60 (9th Cir. 2017) (citing *Pentagon Papers*, 403 U.S. at 714). That should not be surprising; precedents from the Supreme Court and this Court frequently involve the clash between the First Amendment and an interest of "the first importance," such as the Sixth Amendment right to a fair trial. *CBS*, 729 F.2d at 1178 (citing *Nebraska Press*, 427 U.S. at 562). Nevertheless, it is black letter law that the First Amendment prevails in all but the "most extraordinary" cases. *Id.* at 1183. Moreover, regardless of the nature of the government's asserted interest in imposing a prior restraint, binding precedent requires this Court to apply "extraordinarily exacting" scrutiny. *Id.* at 1178. In *CBS*, for example, this Court reversed the district court's restraint on publication of surveillance tapes that were

to be introduced at a criminal trial, finding that the defendant's interest in a fair trial was insufficient to justify the restraint on the network's speech. In its analysis, the Court looked to prior restraint cases from contexts as varied as injunctions against the publication of the Pentagon Papers and against leafleting in public. 729 F.2d at 1183–84 (citing *Pentagon Papers*, 403 U.S. at 714). Across these varied contexts, courts apply extraordinarily exacting scrutiny to prior restraints. That scrutiny requires this Court to undertake an especially rigorous examination of the government's interest and the tailoring of the restraint.

## II.    The district court's failure to hold the government to the First Amendment's demanding burden conflicts with prior decisions of this Court and the Supreme Court.

Throughout the proceedings below, the district court correctly recognized that the government's restriction of Twitter's speech was a prior restraint. *See Twitter v. Barr*, 445 F. Supp. 3d at 302–03; *see also Twitter v. Sessions*, 263 F. Supp. 3d 803, 806 (N.D. Cal. 2017) (denying government's prior motion for summary judgment without prejudice partly on the ground that the "[g]overnment's restrictions on Twitter's speech are content-based prior restraints"). Nonetheless, the district court failed to hold the government to the extraordinarily demanding burden required to justify a prior restraint. Instead, the district court applied the type of scrutiny required for an ordinary content-based restriction on speech. *See Twitter v. Barr*, 445 F. Supp. at 302–03. This was error.

Applying First Amendment scrutiny in only a single paragraph, the district court concluded that the government's restraint on Twitter's speech was "narrowly tailored," *id.* at 303—which is the standard required for typical content-based restrictions on speech, not the heightened standard for a prior restraint. *Compare Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (discussing application of strict scrutiny to content-based restrictions), *with Carroll*, 393 U.S. at 183–84 (requiring that prior restraints be couched in the "narrowest terms" to accomplish an essential "pin-pointed objective"). Explaining that conclusion, the court offered only that the restraint was narrowly tailored because Twitter's proposed speech "could be expected to" and "would be likely to lead to grave or imminent harm to the national security, and that no more narrow tailoring of the restrictions can be made." *Twitter*, 445 F. Supp. 3d at 303.

But the First Amendment does not allow the government to impose prior restraints in order to avoid potential harm that is merely "likely" or "could be expected" to result. Rather, this Court requires a finding that the "degree of imminence [of the harm be] extremely high." *Domingo*, 727 F.2d at 1429 n.9. "The danger must not be remote or even probable; it must immediately imperil." *Id.*; *see also Levine*, 764 F.2d at 595 (holding that the activity restrained must pose "either a clear and present danger or a serious and imminent threat to a protected competing interest"). For example, *CBS* and *Nebraska Press* acknowledged that

widespread pretrial publicity raised the possibility or even the likelihood of prejudicing potential jurors. *See CBS*, 729 F.2d at 1180; *Nebraska Press*, 427 U.S. at 569. However, both cases concluded that the publication of information about the cases before trial would not necessarily lead to irreparable harm. *See CBS*, 729 F.2d at 1180 ("[I]t is not enough that publicity might prejudice one directly exposed to it. If it is to be restrained, the publicity must threaten to prejudice the entire community so that twelve unbiased jurors can not be found."); *Nebraska Press*, 427 U.S. at 565 ("[P]retrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial."). Accordingly, both cases refused to uphold the prior restraints. *See CBS*, 729 F.2d at 1176; *Nebraska Press*, 427 U.S. at 570.

Similarly, it is not sufficient for a court simply to conclude that "no more narrow tailoring of the restrictions can be made," as the district court held here. *Twitter*, 445 F. Supp. 3d at 303. Rather, the court must "assess the probable efficacy of prior restraint on publication." *Nebraska Press*, 427 U.S. at 565. Logically, the efficacy of a prior restraint cannot be measured in terms of whether it will halt a specific publication—which would be circular—but rather whether it will actually prevent the claimed harm from occurring. *See Pentagon Papers*, 403 U.S. at 733 (Stewart, J., concurring) ("The fact of a massive breakdown in security is known, access to the documents by many unauthorized people is undeniable, and

the efficacy of equitable relief against these or other newspapers to avert anticipated damage is doubtful at best."). In cases involving pre-trial publicity, for example, a restraint on media coverage is unlikely to be effective because potential jurors may receive the same information through word of mouth or other sources. *See Nebraska Press*, 427 U.S. at 565–67. The court must also determine that no less restrictive alternative for addressing the harm exists. *Id.* at 565. In pre-trial publicity cases, courts have noted the existence of far less restrictive measures such as extended voir dire or "emphatic jury instructions." *CBS*, 729 F.2d at 1183.

Here, Twitter raised serious doubts about the necessity and efficacy of the government's prior restraint and the possibility of alternatives. Twitter's proposed Transparency Report included numerous different methods of disclosing information to its users—including by providing aggregate numbers of law enforcement orders, comparing the aggregate number of orders Twitter received to the aggregate number received by other companies, and providing a narrative descriptive statement—but the court below censored the report in its entirety rather than making a particularized assessment of each alternative. *See* Compl. ¶ 39, Oct. 7, 2014 (ECF No. 1). The government claimed generally Twitter's draft transparency report would cause harm by giving adversaries a "roadmap to the existence or extent of Government surveillance and capabilities" regarding Twitter. Defs.' Opp'n to Pl.'s Cross-Mot. for Summ. J. 5, Nov. 22, 2019 (ECF No. 321).

But such conclusory statements are not sufficient, particularly in light of the nearly seven years that have passed since any surveillance covered by the report took place—as well as the extensive public discussion of the government's national security surveillance capabilities. *See* Pl.'s Notice of Cross-Mot. & Cross-Mot. for Summ. J. 8, Oct. 25, 2019 (ECF No. 311) ("Not only is the information at issue over six years old, but adversaries certainly know (because it is a matter of public record) that Twitter receives national security process, as well as the types of information that the Government seeks with that process."); Pl.'s Reply in Supp. of Its Cross-Mot. Summ. J. 5–6, Dec. 18, 2019 (ECF No. 326) (discussing information in the public domain). The government also fails to identify any harm that would result from the possibility that Twitter seeks to report that it received zero of a particular type of surveillance order during six months in 2013. *Id.* at 7 (noting that "companies have disclosed when they received zero national security requests or zero of a particular kind of request . . . and the Government has neither prohibited those disclosures nor shown any resulting harm"). The district court did not address any of the evidence or arguments concerning these issues.

The district court's failure to conduct a far more searching review led it to erroneously uphold the government's ban on Twitter's publication of its draft transparency report. The government's reliance on classified declarations in this

case did not absolve the district court from relying on "precedent and experience" to test the government's justifications for its prior restraint. *CBS*, 729 F.2d at 1180.

## CONCLUSION

Accordingly, amici respectfully request that this Court vacate the district court's judgment, apply "extraordinarily exacting" First Amendment scrutiny to the prior restraint, and remand with instructions to grant Twitter's Cross-Motion for Summary Judgment on its First Amendment claim.

Dated: September 30, 2020

By: /s/ *Andrew Crocker*
       Andrew Crocker

Naomi Gilens
ELECTRONIC FRONTIER
   FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
andrew@eff.org

Ashley Gorski
Brett Max Kaufman
Patrick Toomey
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
125 Broad Street, 18th Fl.
New York, NY 10004
Tel.: (212) 549-2500
agorski@aclu.org

Matthew T. Cagle
ACLU FOUNDATION OF
   NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111

Tel.: (415) 621-2493
mcagle@aclunc.org

Peter J. Eliasberg
ACLU FOUNDATION OF
    SOUTHERN CALIFORNIA
1313 W 8th Street, Suite 200
Los Angeles, CA 90017
Tel.: (213) 977-9500
peliasberg@aclusocal.org

David Loy
ACLU FOUNDATION OF SAN
    DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
Tel.: (619) 398-4187
davidloy@aclusandiego.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), I certify as follows:

1.      This foregoing Brief of Amici Curiae in Support of Plaintiff-Appellant Twitter, Inc. and Reversal complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,737 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated:  September 30, 2020          By:  _/s/ Andrew Crocker_
                                            Andrew Crocker

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 30, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  September 30, 2020         By:  _/s/ Andrew Crocker_____
                                        Andrew Crocker